JOSEPHINE G. CAMBRELENG, Respondent, *v.* ELLA WARD GRAHAM, Appellant.

*Gift inter vivos — essentials thereof.*

To constitute a valid gift *inter vivos* the donor must be competent to give and the donee to receive ; the donor's dominion over the property must be such that he has a present right to give it ; he must intend to make the gift ; there must be an actual delivery of the property, so far as it is capable of delivery, that the donor may not be in a position to revoke the gift, and the donee must accept it.

APPEAL by the defendant, Ella Ward Graham, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 11th day of April, 1894, upon the report of a referee.

*Robert T. Varnum,* for the appellant.

*Henry L. Sprague,* for the respondent.

PARKER, J. :

The referee found that plaintiff's father, by a valid gift *inter vivos*, vested in her the title to a piano, which he afterwards undertook to transfer by bill of sale, properly executed, through a third person, to his wife, this defendant, and adjudged that plaintiff was entitled to recover its possession from the defendant.

To constitute a valid gift *inter vivos* the donor must be competent to give and the donee to receive ; the donor's dominion over the property must be such that he has a present right to give it; he must intend to make the gift; there must be an actual delivery of the property, so far as it is capable of delivery, that the donor may not be in a position to revoke the gift, and the donee must accept it.

The evidence before the referee authorized him in finding the presence of all these essentials to a gift, as we think, except one. We do not find any evidence to support the finding of delivery.

Plaintiff's father purchased the piano of Steinway & Sons in the early part of May, 1886. He was an old friend of Wm. Steinway, and for that reason the head of the firm gave to the matter his personal attention. His description of what was said and done on that day, by and between plaintiff, her father and himself, constitutes the

most important part of the evidence presented. He said that when Col. Graham (plaintiff's father) came in he referred to his daughter and said he wanted to buy a piano for her; that they tried several, selected one, agreed upon the price, and, continued the witness: "Now comes an episode that I remember distinctly every word of because it is a part of our business policy. He said: 'Mr. Steinway, I want to give you a check for this to-morrow; you need not send it until you have pay for it.' I told him that was unnecessary, he could pay later on; that I knew who he was, and he turned around and said: 'Joe, this piano is now your own property.' I distinctly remember that; and he said: 'Mr. Steinway, you had better have the bill made out in her name.' I said: 'Col., allow me to ask you one question; how old is your daughter?' and I distinctly remember he said sixteen years. I said: 'Col., in our experience with several lawsuits we have had it is not a good idea to have a money transaction with a minor, make a sale to a minor; and, although this is of almost daily occurrence with a father or mother. or an adult member of a family, we always advise our friends to make the transaction with themselves; your check pays for it and is a perfect chain of evidence. If you want to give it to your daughter, indorse on the back of it, 'In consideration of my love and affection, I hereby give the within-mentioned piano to my daughter Josie.'' He said he would do it. Q. That is a full account of the transaction so far as you now remember? A. With the exception that he came in the next day and handed us a check for $750, and received our check as a drawback, being an intimate personal friend, for $100, and received a bill of sale with a warranty, and he came in there on the third and fifth and on sixth and seventh, four consecutive days, and spoke about the mortgages and about the piano, and he said he would — in fact, he took it right down as I dictated it — 'In consideration of my love and affection, I do hereby give the within-described piano to my daughter Josephine.' Q. You merely know he took down at that time what you said? A. Yes; he said he would indorse it on the bill."

This testimony clearly shows an intention to purchase the piano for the plaintiff. But as he had not acquired either title or possession at the time when the conversation took place, necessarily that which he said did not amount to a gift or delivery, for a man cannot

give what he does not own, nor deliver that which he has not the possession of. That he did not expect a delivery by Steinway & Sons, until after payment, is shown by his statement to Mr. Steinway, " I want to give you a check for this to-morrow; you need not send it until you have pay for it."

It is true that the reply was " You can pay later on," but the suggestion of Col. Graham was not modified, and the piano was not delivered until after it was paid for.

Had Col. Graham accepted the suggestion, and replied that he would take the piano and pay for it later, still the contract would have been void under the Statute of Frauds.

But it may be said that the delivery of the piano two days later operated to validate the void oral agreement. (*Jackson* v. *Tupper*, 101 N. Y. 515.) Grant it, and the plaintiff is not aided, because Graham did not come into possession of the piano until its delivery by Steinway & Sons, which was two days later than the conversation we have quoted. Certainly he could not make actual delivery of the piano until after its delivery to him by his vendor, and as there is no pretense that a symbolic delivery was at that time attempted, we need not consider whether subsequent validating of the contract would have operated to make such a delivery effectual.

As we have observed, the evidence warranted the finding that Col. Graham intended to make the gift, and now we must inquire whether he made delivery after the piano was sent to his house by Steinway & Sons. From the testimony of Mr. Steinway it appears that he advised Col. Graham that the bill of sale be made out to him, and that if he wished to give the piano to his daughter that he then indorse on the back of it " In consideration of my love and affection, I hereby give the within-mentioned piano to my daughter Josie," and deliver it to her This Col. Graham said he would do. Had he done so it would have constituted as good a delivery as the thing was capable of in view of the fact that this plaintiff was living with her father.

But it seems he did not do it, but instead, later on, by a bill of sale, transferred it through a third person to this defendant.

By that act he not only asserted dominion over the piano, but indicated that he did not regard himself as having made a com-

pleted gift of the instrument whatever he may have intended originally.

The only thing said or done by Col. Graham after the piano reached his house which it is claimed tends to show delivery is found in the testimony of Victorie Graham; she said, "After the piano had got home he came upstairs and said he wished I would go down and try Josie's piano; I remember that distinctly."

We do not think this declaration, under the circumstances attending its making and in view of defendant's subsequent assertion of ownership, warrants the inference that the piano had then been delivered to the plaintiff. In a great majority of families doubtless the real owner of all the personal property used by the family speaks of certain articles as if they were the property of the children, such as "this is Charlie's saddle horse, or Mary's piano, or Sarah's new bookcase," without intending to convey the impression that he had made a complete gift of them such as would enable the children to obtain an adjudication that they were severally the owners of such property. This expression, so frequently employed by fathers generally, means only that the article has been acquired by the father for the use and pleasure of this child while a member of his household.

The judgment should be reversed and new trial ordered, with costs to abide the event.

VAN BRUNT, P. J., and FOLLETT, J., concurred.