### DE PUY v. STEVENS.

(Supreme Court, Appellate Division, Fourth Department. February 3, 1899.)

1. GIFT INTER VIVOS—EVIDENCE.

A gift is not established by testimony of D.'s mother that S. directed D. to take S.'s book to the bank, and have it made out in the name of both, "so that either could draw at any time"; that when the account had been changed to "S. or D.," and a deposit book issued, bearing their names as above, with the words, "either or survivor to draw," D. took it to S., who returned it to D. with the remark that it was all right, and, "It is yours; take it, and put it away, and take good care of it," and, upon D. saying, "They will talk after this," S. replied, "What do you care? You are all right," D. having, after the death of S., filed a claim against his estate for services in transacting the banking business of S., both before and after the transfer down to three days after the death of S., when D. drew out the money to pay the funeral expenses of S.; the treasurer of the bank having testified that the change in the account was made on his suggestion, D. having informed him that S. was in poor health, and wished to have the account so arranged that money could be drawn without her signing checks therefor; the executrix testifying that D. stated to her that she did not think S. fully realized what she was doing when she signed the transfer check, and that it was signed so if S. became unconscious D. could draw money for her, and that she did not suppose S. intended she should have what money remained in the bank, and that she would relinquish all her claim to it if executrix would pay her claim and that of her father and mother; and S. having, after the

change in the account, drawn her check on the account, and delivered it to D., who received the avails thereof.

2. SAME—JOINT OWNERSHIP.

As the evidence to sustain a gift was insufficient, joint ownership based on such gift is not established.

Appeal from special term, Onondaga county.

Action by Hattie De Puy against Cynthia L. Stevens, executrix of Nancy Sibbalds, substituted in place of Onondaga County Savings Bank. Judgment for plaintiff entered on a decision of the court after trial. Defendant appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and WARD, JJ.

J. N. Hammond, for appellant.
James Devine, for respondent.

ADAMS, J. This action was brought originally against the Onondaga County Savings Bank to recover a balance of $999.64 remaining on deposit in that institution, the plaintiff claiming that she had received the same by gift from one Nancy Sibbalds during the latter's lifetime. The defendant, as sole executrix of the last will and testament of Mrs. Sibbalds, who departed this life shortly after having made the gift in the manner alleged by the plaintiff, contests this claim, and insists that whatever money remains on deposit in the bank belongs to the estate, which she represents. By reason of these conflicting claims the defendant was, by an order of interpleader, duly substituted as defendant herein in the place of the savings bank, and the single question which the case now presents relates to the ownership of this money. It appears that the testatrix was for many years prior to her death a resident of the village of Seneca Falls, in this state, during which time she had money on deposit in the Onondaga County Savings Bank. In January, 1896, the plaintiff went to Seneca Falls, and, after remaining about a week at the house of the testatrix, took the latter home with her to the village of Baldwinsville, near Syracuse, where they arrived on the 14th day of January. At about this time the money which the testatrix had on deposit in the bank amounted to $1,332.74, and on the 25th day of January the plaintiff presented to the bank a check for that amount, which bore the signature of the testatrix. This check was payable to "new account or bearer," and upon its presentation an account for the amount thereof was opened upon the books of the bank in the name of "Mrs. Nancy Sibbalds or Miss Hattie De Puy," and a deposit book was handed to the plaintiff, which bore the names of the depositors as above stated, with these words added: "Either or survivor to draw." On the 3d day of February thereafter a check for $100 was signed by Mrs. Sibbalds, payable to Hattie De Puy or bearer, and that amount was subsequently drawn from the bank by the payee. On the 26th day of the same month Mrs. Sibbalds died, and on the day of her death the plaintiff drew $250 from the bank upon her own check, which she claims to have used in payment of funeral expenses and other indebtednesses of the deceased. Thereafter, and on the 2d day of

March, 1896, the plaintiff signed another check for $2.70, which was likewise paid by the bank, and some accrued interest was soon thereafter credited to the account, which brought the balance up to the amount heretofore mentioned, viz. $999.64. At the time the alleged gift was made in the manner just described, the donor, Mrs. Sibbalds, although somewhat advanced in years, and not over-vigorous in body, apparently had no expectation of departing this life in the immediate future, and consequently it cannot with any propriety be claimed that the gift, if there was one, was executed in view of the near approach of death. If any such idea was ever entertained, it was abandoned by the learned counsel for the plaintiff upon the argument of this appeal, for he then frankly conceded that his client's right to recover herein rested solely upon her ability to establish her title to the money in dispute by a gift inter vivos; and it is therefore to a consideration of the case from that stand-point that our attention must be directed.

It is a rule of law of long standing that to support a valid gift of the character just mentioned there must be an actual or symbolical delivery of the property donated, accompanied by an intention on the part of the donor to devest himself of all title to and dominion over the same; the reason for this rule being that, until these essential conditions have been fulfilled, there always remains the locus poeni-tentiæ,—that is, the "opportunity for the giver to repent and change his purpose." 2 Schouler, Pers. Prop. (1st Ed.) p. 70; Young v. Young, 80 N. Y. 422. The important and vital question, therefore, with which we have now to deal is this: Does the evidence furnished by the plaintiff satisfy the requirements of this rule? In answering this question it is to be borne in mind that the lips of the alleged donor are sealed in death, in consequence of which we are deprived of any direct and positive evidence as to the intent with which she made the change in her bank account; and this circumstance furnishes an additional reason why the rule that one who alleges a gift must prove it satisfactorily should be strictly enforced in this particular instance, and why the plaintiff should be permitted to establish her title by nothing less than evidence of the highest probative force: Doty v. Willson, 47 N. Y. 580; Cambreleng v. Graham, 79 Hun, 247, 29 N. Y. Supp. 419; In re Rogers, 10 App. Div. 593, 42 N. Y. Supp. 133; Jones v. Perkins, 29 App. Div. 37, 51 N. Y. Supp. 380. Upon examination of the record before us we discover that the evidence relied upon to support the gift consists chiefly of the declarations of the donor, the principal and most important portion thereof being fur-nished by the mother of the donee, who undertakes very briefly to relate a conversation which she claims to have overheard between her daughter and the donor, in which, as she testifies, the latter directed the plaintiff to take her (Mrs. Sibbalds') book to the bank, and have it made out in the name of both, so that "either could draw at any time"; and she further testified that, after the account had been thus changed, her daughter brought the book back, and showed it to Mrs. Sibbalds, who looked at it, and then returned it to the plaintiff with the remark that it was all right, and added, "It is yours; take it, and put it away, and take good care of it;" that the plaintiff then said,

"They will talk after this," whereupon Mrs. Sibbalds replied, "What do you care? You are all right." This evidence, together with that of one or two witnesses who testified to declarations made by the testatrix long before the transfer of the bank account, to the effect that she intended to make some provision for the plaintiff, and the fact that the account was changed in the manner described, is absolutely all there is in the case to show that in making the change the testator intended to give the money which she had on deposit in the bank, or any portion thereof, to this plaintiff. Practically, therefore, the plaintiff's title to this money rests upon the unsupported evidence of a single witness, and that witness her mother, who, it appears, also makes a claim of $150 against the estate of the decedent for six weeks' board, washing, and attendance. Such evidence as this, even though it were uncontradicted, is not, in our opinion, altogether satisfactory and convincing; and what probative force it does possess is very materially weakened when it is considered in connection with other evidence in the case, by which it is made to appear that subsequent to the death of the testatrix the plaintiff filed a claim against the estate, amounting to $275, for services alleged to have been rendered on behalf of the decedent in transacting her banking business, not only prior to the transfer of the account, but down to February 29, 1896, or three days after the death of the alleged donor,—all of which would seem to indicate that the plaintiff, at least, did not suppose, when she filed her claim, that she had any interest in the moneys in bank, which virtually constituted the entire estate of the decedent. This inference is considerably strengthened by the evidence of the treasurer of the savings bank, who testified that the change in the account was made at his suggestion, and because of the fact that he was informed by the plaintiff that Mrs. Sibbalds was in poor health, and wished to have the account so arranged that money could be drawn without compelling her to sign checks therefor. It is further strengthened by the evidence of the defendant, who testified that the plaintiff stated to her that she did not think Mrs. Sibbalds fully realized what she was doing when she signed the transfer check; that it was signed so that, if Mrs. Sibbalds became unconscious, the plaintiff could draw money for her; that she did not suppose Mrs. Sibbalds intended that she should have what money remained in the bank, and that she would relinquish all right or title which she might have thereto if the defendant would pay her claim and that of her father and mother. It is still further strengthened by the fact that the plaintiff drew $250 of this money after the death of the testatrix, and used the same to pay debts and funeral expenses, which she was certainly under no legal obligation to do if the money belonged to her. And, finally, it gains material strength from the conceded fact that the pretended donor actually exercised dominion over the money on deposit after the change in the account had been accomplished by drawing her check for $100, which she delivered to the plaintiff, who received the avails thereof from the bank. So that, without further elaboration of this feature of the case, we think we may say without hesitation or qualification that the evidence as a whole not only falls far short of fulfilling the requirements of the rule to which reference has already been made, but that

it likewise fails to answer the requirements of the further rule, viz. that, in order to support a gift, either inter vivos or causa mortis, which is not asserted until after the death of the alleged donor, the evidence thereof, whether direct or circumstantial, must be clear, satisfactory, and convincing. Rix v. Hunt, 16 App. Div. 540, 44 N. Y. Supp. 988; In re Manhardt, 17 App. Div. 1, 44 N. Y. Supp. 836; Tilford v. Bank, 31 App. Div. 565, 52 N. Y. Supp. 142; In re O'Connell, 33 App. Div. 483, 53 N. Y. Supp. 748.

Having thus reached the conclusion that the plaintiff has failed to establish title to the moneys in question by a gift inter vivos, it only remains to consider another question, which is apparently regarded by the plaintiff's counsel as subsidiary to his main contention, and that is whether or not the plaintiff takes the residuum of the fund on deposit as survivor. The only theory upon which such a contention can be maintained is that a joint ownership was created when the fund was withdrawn from the bank and redeposited in the name of Mrs. Sibbalds and the plaintiff; and whether or not this was accomplished depends largely upon the intent with which that change was made. As the plaintiff's interest, whether joint or otherwise, is founded upon the alleged gift from the defendant's testatrix, we think that much of what has already been said applies as well to the question of survivorship as to that of a gift inter vivos. In either case the intent of the donor is an essential element, and the circumstances to which reference has been made tend with as much force in the one as in the other to prove the absence of an intent on the part of Mrs. Sibbalds to vest the plaintiff with any title whatever to the money which she had on deposit. Indeed, the inference which would most naturally be drawn from the form in which the new account was opened, as well as from the circumstances attending its opening, is that the moneys which it represents were deposited in the name of "Mrs. Nancy Sibbalds or Miss Hattie De Puy," in order that the latter, who was, as she claims, acting as the financial agent of the former, might draw them from the bank without putting her principal to the trouble and annoyance of signing checks therefor; and the privilege of drawing was doubtless extended to the survivor upon the assumption that the agent would, in all probability, survive her principal, and, if so, that she would, as proved to be the case, require money with which to defray the funeral expenses of the principal. Joint tenancy, whether in land or personalty, is not favored, either in law or equity; and it will never be inferred where any other deduction can be fairly made. In consequence, survivorship, which is an incident to joint tenancy, is seldom presumed. Perry, Trusts, § 136. Our attention has been directed to a number of authorities, which apparently recognize, if they do not establish, a different doctrine than the one just stated; notably Sanford v. Sanford, 58 N. Y. 69, and McElroy v. Bank, 8 App. Div. 192, 40 N. Y. Supp. 340. But it is to be observed that in both of these cases the relation of husband and wife existed, and that in the one first mentioned the note upon which the action was brought was payable jointly to the plaintiff and her husband. The circumstances of the case last cited are more like those of the one under consideration, for there, as here, a deposit had been made in the bank to the credit

of one or the other of two persons, with the provision attached that the survivor might draw; but, as he has already been suggested, the parties were husband and wife, and it was said that the intent of the former that the latter should take as survivor was made to appear very plainly, wherein consists the material difference between the two cases. We have given the careful consideration to this case which its importance demands, but, the more we examine it, the more are we impressed with the idea that the conclusion reached by the learned trial justice is not supported by the evidence. We consequently feel constrained to reverse the judgment appealed from.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.