(59 App. Div. 538.)

## WOOD v. ZORNSTORFF.

(Supreme Court, Appellate Division, Fourth Department. March 19, 1901.)

BANKS—JOINT DEPOSIT—OWNERSHIP—INTENTION OF PARTIES—QUESTION FOR JURY—DIRECTION OF VERDICT.

In 1890, deceased, an old man, transferred a bank deposit of $185 from his own name to the joint account of himself and daughter, the defendant. The deposit was added to from time to time, and at the death of deceased amounted to $1,538. Deceased's two sons paid him $12.50 per month, and supported and clothed him, and also paid him $300 per annum for three years in addition to his monthly allowance. In 1897 deceased made a will devising $850 in general legacies, and made defendant his residuary legatee, and had no property other than the bank account. The pass book was in defendant's possession, and several times deceased requested its return, and defendant promised to do so without asserting any claim to the deposit. *Held*, in an action by deceased's executor to recover the deposit, that the direction of a verdict for defendant at the close of plaintiff's evidence was erroneous, since it was sufficient to justify a finding that the deposit did not belong wholly to defendant, and the intention of the parties in making the transfer and in keeping a joint account was for the jury.

Appeal from trial term, Monroe county.

Action by Rollin B. Wood, as executor of the last will and testament of Frederick Weitz, deceased, against Catherine Zornstorff. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Pomeroy P. Dickinson, for appellant.
William A. Sutherland, for respondent.

SPRING, J. November 17, 1890, Frederick Weitz had on deposit in the Rochester Savings Bank $185.85. On that day the account was transferred to Frederick Weitz and Catherine Zornstorff, the defendant in this action, and the usual pass book showed the account in that form. The account was continued in this manner, and additions were made to it, until the entire sum, amounting to $1,538.50, was withdrawn by the defendant, January 7, 1899, three days after the death of her father. The pass book during this period was retained by the defendant, but it does not appear with any satisfactory clearness who was responsible for the deposits made from time to time. Mr. Weitz was an old man, who moved about with difficulty, and in 1889 he had conveyed his farm to his two sons, who at first paid him a monthly allowance of $12.50, and also supported, clothed, and maintained him. Later, during that year, in compromise of an action pending between the father and his sons, this agreement was modified by providing for the payment to the old gentleman of $300 in three equal annual payments in addition to his monthly stipend. He was evidently a thrifty, economical man, and it is not a violent inference to entertain that out of these moneys he added to the bank account, as the deposits were strung along during this entire period in small sums. It can be urged with some plausibility that the account itself confirms the claim that these deposits were made by the father. In November, 1897, he made his last will and testament, dis-

69 N.Y.S.—16

posing of $850 in general legacies, and making the defendant his residuary legatee. It does not appear that he was the owner of any considerable property, unless this bank account represented his savings, and it can be claimed that his motive in drawing his will was to dispose of that fund. Beyond the inferences which might be drawn from these facts and circumstances, there was direct proof of more or less cogency. Several witnesses testified that the old gentleman repeatedly asked the defendant for his pass book, and she promised that she would bring it to him. She lived seven or eight miles from her father, and occasionally, at his instance, relatives called at her house, informing her that her father wanted his pass book, and she invariably promised to take it to him. When she came to visit him once he said, "I want my bank book, and I want to have my money, and look after it myself;" and she replied, "I will bring it to you some time or other." At another time when she came without it, he said to her, "Rather curious; a person who has money in the bank, and can't get a hold of his book and see whatever is going on with it." In these conversations, so far as the proof shows, there was no suggestion by her that the moneys in the bank were her property, or that the survivor was to take them, nor did she dispute his right to the bank book.

While these facts do not conclusively establish the fact that the father owned or was interested in the deposits, they may warrant inferences, unexplained as they are now, which would justify a jury in finding the moneys, at least, did not wholly belong to the defendant. While the bank book during this period was in the name of the father and daughter, it does not necessarily follow from that fact that she was to receive the whole sum upon his death. The intention of the parties in making this transfer to the two, and in keeping it in that form, is what must control the solution of this action. De Puy v. Stevens, 37 App. Div. 289–294, 55 N. Y. Supp. 810; In re Bolin, 136 N. Y. 177, 32 N. E. 626. It may have been placed in the names of the two either to assure title in the survivor, or as a matter of convenience for this father in his advanced years, to enable his daughter to transact the business for him; and it is for the jury, taking into consideration their relations, and all the facts and circumstances, with the deductions to be properly drawn therefrom, to determine where the truth lies.

The judgment and order should be reversed, with costs to the appellant to abide the event. So ordered. All concur.