(44 Misc. Rep. 102.)

KELLY v. HOME SAV: BANK OF CITY OF ALBANY et al.

(Supreme Court, Special Term, Albany County. June, 1904.)

1. GIFT—SAVINGS DEPOSIT—EVIDENCE.

A mother had certain money deposited in a savings bank in her own name. A rule of the bank forbade its withdrawal except on presentation of the pass book. The mother executed a will leaving all her bank deposit not exceeding $7,000 to her daughter. Thereafter she notified the bank that she would like her accounts so arranged that either she or her daughter could draw it, and so that her daughter could get the money on her death, and a new book was made out in the name of herself or her daughter or the survivor. When the deposits exceeded $7,000, the mother revoked by a codicil to her will the gift of the bank deposits, and substituted $7,000 in money, and retained her pass book during her life. *Held*, there was no absolute gift of the deposit, the mother being at all times able to draw it without the aid or permission of her daughter.

2. TESTAMENTARY DISPOSITION—BANK DEPOSIT.

Where a mother deposited money in a savings bank in the name of herself or daughter or the survivor of them, intending that on her death her daughter should have the deposit, such intent did not entitle the latter to recover it; it being insufficient as a testamentary disposition of the property.

Action by Sarah E. Kelly against the Home Savings Bank of the City of Albany and others to recover a deposit in suit as a gift. Judgment for defendants.

Upon the trial the jury answered in the affirmative the question, submitted to them by the court, "Did Mrs. Beers intend to create a joint tenancy in herself and the plaintiff in the moneys deposited in the Home Savings Bank, the ownership of the whole to go to the one who survived?" About a year after Mrs. Beers had made a will giving the plaintiff all her deposits in any banks of the city of Albany, not to exceed $7,000, and before she made, at a time when they exceeded that sum, a codicil by which she revoked that bequest, and gave the plaintiff $7,000 instead in money, she went with the plaintiff to the defendant, presented her pass book, and said to an officer of the defendant that she "would like that account arranged so that either she or her daughter could draw it, and if anything happened to her, her daughter could get the money without any further trouble." The officer told her that "he would make out a new book in the name of herself or her daughter, or the survivor of them; that would arrange it as she wished." She then signed a check for the balance of the old book, and deposited the check in a new book, made out in the name of "Kate V. Beers or Sarah E. Kelly, her daughter, or the survivor of them." Mrs. Beers kept the new book, and it was found after her death in her secretary, to which she and her daughter had keys.

Countryman, Nellis & Dubois, for plaintiff.
Harris & Rudd and Milton H. Merwin, for defendants.

HERRICK, J. The facts herein are fully stated in the decision filed herewith (89 N. Y. Supp. 780), and I will not repeat them here. In Matter of O'Connell, 33 App. Div. 483, 53 N. Y. Supp. 748, it was said by Follett, J., that:

"He who attempts to establish title to property through a gift inter vivos as against the estate of a decedent takes upon himself a heavy burden, which he must support by evidence of great probative force, which clearly establishes

---

¶ 1. See Gifts, vol. 24, Cent. Dig. §§ 53, 55, 56.

every element of a valid gift, viz., that the decedent intended to devest himself of the title in favor of the donee, and accompanied his intent by a delivery of the subject-matter of the gift."

It has also been said that:

"The elements necessary to constitute a valid gift are well understood, and are not the subject of dispute. There must be on the part of the donor an intent to give, and a delivery of the thing given, to or for the donee, in pursuance of such intent, and on the part of the donee, acceptance. The subject of the gift may be chattels, choses in action, or any form of personal property, and what constitutes a delivery may depend on the nature and situation of the thing given. The delivery may be symbolical or actual, that is, by actually transferring the manual custody of the chattel to the donee, or giving to him the symbol which represents possession. * * * But delivery by the donor, either actual or constructive, operating to devest the donor of possession of and dominion over the thing, is a constant and essential factor in every transaction which takes effect as a completed gift. Anything short of this strips it of the quality of completeness which distinguishes an intention to give, which alone amounts to nothing, from the consummated act, which changes the title. Beaver v. Beaver, 117 N. Y. 421, 428, 429, 22 N. E. 940, 941, 6 L. R. A. 403, 15 Am. St. Rep. 531. In order to render a gift valid, causa mortis or inter vivos, the gift must be delivered to the donee, or it must be placed in his power by delivery of the means of obtaining possession. Without delivery the transaction is not valid as an executed gift. An absolute gift requires a renunciation by the donor and an acquisition by the donee of all interest in, and title to, the subject of the gift. A portion cannot be retained, and the remainder disposed of." Curry v. Powers, 70 N. Y. 212, 26 Am. Rep. 577.

In the case at bar there was no renunciation by the donor of all interest or title in the money. There was no symbolical delivery; the pass book, without which the money could not be drawn, was retained by her in her own possession. She never devested herself of control over the money; she could draw any or all of it at any time without the aid, assistance, or permission of the plaintiff. As was said in De Puy v. Stevens, 37 App. Div. 289, 55 N. Y. Supp. 810:

"There must be an actual or symbolical delivery of the property donated, accompanied by an intention on the part of the donor to devest himself of all title to, or dominion over, the same; the reason for this rule being that until these essential conditions have been fulfilled, there always remains the locus pœnitentiæ, that is, 'the opportunity for the giver to repent and change his purpose.' "

In this case there was an "opportunity for the giver to repent and change his [her] purpose." At most there is shown but an intent to give. The case does not show those "qualities of completeness which distinguishes an intention to give, which alone amounts to nothing, from the consummated act, which changes the title." Beaver v. Beaver, 117 N. Y. 421–429, 22 N. E. 940, 941, 6 L. R. A. 403, 15 Am. St. Rep. 531. The intention of her mother that the plaintiff should have the money after her death does not entitle the plaintiff to recover, because as a testamentary disposition of her property it is invalid, and because, "if the gift regards the future, it is but a promise without consideration, and has no validity." Curry v. Powers, 70 N. Y. 212–215, 26 Am. Rep. 577.

It is claimed, however, that if not a valid gift inter vivos, that a joint ownership with the right of survivorship was created by the acts of

Mrs. Beers. "Joint tenancy, whether in land or personalty, is not favored either in law or equity, and it will never be inferred where any other deduction can be fairly made. In consequence, survivorship, which is an incident to joint tenancy, is seldom presumed." De Puy v. Stevens, 37 App. Div. 289, 55 N. Y. Supp. 810.

The cases of McElroy v. Albany Savings Bank, 8 App. Div. 46, 40 N. Y. Supp. 422; McElroy v. National Savings Bank, 8 App. Div. 192, 40 N. Y. Supp. 340, and Matter of Meehan, 59 App. Div. 156, 69 N. Y. Supp. 9, were all cases where the deposit was made in the name of husband and wife, or husband or wife, and where it was held that on account of the relationship existing between the parties that that was evidence of an intent to give the moneys to the wife in case she survived him.

In the McElroy Cases it was held that it was not necessary to the validity of the gift, under the circumstances, that the wife should have possession of the pass book during the lifetime of her husband; that because of the unity of husband and wife, the possession of the husband was the possession of the wife. These cases, therefore, cannot be considered authorities in any cases except those of husband and wife. The mere fact that the money was placed in the names of both does not create a joint ownership with the right of survivorship. Whether a gift "inter vivos" of the entire property, or the creation of a joint ownership, it is in either case a gift of property, and to be a gift it must be a completed one, parting with control over the property, with no opportunity for repentance and recall.

The case of Young v. Young, 80 N. Y. 422, 36 Am. Rep. 634, was a case where, upon the death of the intestate, bonds were found in two packages inclosed in an envelope, upon which were indorsed memoranda signed by him, each of which described the bonds inclosed by numbers, and stated that certain of them belonged to William H. Young and the others belonged to John N. Young. Then followed a statement of the indorsement, of which the following is a copy:

"But the inst. to become due thereon is owned and reserved by me for so long as I shall live, at my death they belong absolutely and entirely to them and their heirs."

William H. Young and John N. Young were his sons. The controversy arose over the portion of them that were said to belong to William H. Young, and the court said:

"The intention of Joseph Young, deceased, to give the bonds in controversy on this appeal to his son William H. Young, reserving to himself only the interest during his lifetime, was so clearly manifested that we have examined the case with a strong disposition to effectuate that intention, and sustain the gift, if possible."

After discussing what is necessary to constitute a valid gift, the court said:

"A gift cannot be made by creating a joint possession of donor and donee, even though the intention be that each shall have an interest in the chattel, especially where, as in this case, the line of division between these interests is not ascertainable. * * * If, therefore, the donor retained the custody of the bonds for the purpose of collecting the accruing interest, or even if they

were placed in the joint custody or possession of himself and the donee, there was no sufficient delivery to constitute a gift."

It has become very common, particularly for people advanced in years, to open accounts, or change accounts already opened, in substantially the manner adopted in this case; indeed, some savings banks have printed forms for the purpose. This custom has given rise to much controversy and litigation, and no general rule can be laid down that will govern all cases. But the mere fact that a deposit is made so that either of two persons can draw from it does not, of itself, suffice as proof of a gift from the original owner of the money to the other party to the account.

The case of Wood v. Zornstorff, 59 App. Div. 538, 69 N. Y. Supp. 241, was a case where the deposit was made in the name of a father and daughter. The daughter kept the pass book. There was evidence that the father repeatedly asked the daughter for his pass book, and she promised that she would bring it to him, but did not do so. The court said, among other things:

"While the bank book during this period was in the name of the father and daughter, it does not necessarily follow from that fact that she was to receive the whole sum upon his death. The intention of the parties in making this transfer to the two, and in keeping it in that form, is what must control the solution of this action. It may have been placed in the names of the two either to assure title in the survivor, or as a matter of convenience for this father in his advanced years, to enable his daughter to transact the business for him."

Matter of Bolin, 136 N. Y. 177, 32 N. E. 626, was a case where a Mrs. Cody, having moneys deposited in a savings bank, withdrew them, and redeposited in an account entitled "Julia Cody or daughter, Bridget Bolin." A few years prior to Mrs. Cody's death, and while they were both at the bank, the pass book came into the possession of her daughter, Bridget Bolin, who thereafter retained the custody of it. For many years prior to Mrs. Cody's death she had resided with her daughter, and was supported by her, and by reason of grave physical infirmities was the object of much solicitude and care on the part of the daughter. The court said:

"All these facts, however, do not suffice to make out proof of the transfer of title or of a gift. That the moneys were deposited to the account of 'Julia Cody or daughter, Bridget Bolin,' is not a fact from which any inference of a transfer or of a gift arises. In the absence of other evidence, the transaction simply evidenced a purpose of the depositor of the moneys that they should be drawn out by either of the persons named. The only presumption would be that the depositor so arranged for the purposes of convenience, and that presumption is rather strengthened by the facts appearing, of her helpless condition of blindness and of her other infirmities. Nor was the custody of the pass book by the daughter such a possession as evidenced an intention to transfer the ownership of the moneys deposited to the daughter. That is perfectly consistent with the motive of convenience. * * * To constitute a valid gift there must have been the intent to give and a delivery of the thing. The evidence must show that the donor intended to devest herself of the possession of her property, and it should be inconsistent with any other intention or purpose."

The evidence in this case abundantly shows an intention upon the part of Mrs. Beers that the plaintiff should have the money in the

savings banks after her death. It has been shown by oral testimony and by the will of Mrs. Beers. Practically, she divided her estate into three parts, one part to her grandchildren, one part to her son, and one to the plaintiff. The latter part was to consist of the money in the savings banks, to the amount of $7,000. The change of the form of the deposits in the savings banks was in substantial harmony with the provisions of the will, and was doubtless intended to effectuate that provision of the will in relation to the bank deposits. Both show the intent of Mrs. Beers that the plaintiff should have the bank deposits upon the death of Mrs. Beers. But the gift was not made one in præsenti; it was not made complete. Mrs. Beers did not surrender control over the deposits. She kept them, so she could draw them out at any time. She possessed dominion and control over them, and the power to recall or nullify all that she had done in relation to them, and when such deposits came to exceed the sum of $7,000, which sum she intended her daughter to receive, she, by the codicil to her will, recalled and nullified all that she had theretofore done in the direction of disposing of the bank deposits as such. What in De Puy v. Stevens, supra, is spoken of as the locus pœnitentiæ, the opportunity to repent and change her purpose existed, and she availed herself of it. It follows from this that the plaintiff is not entitled to the moneys in the defendant savings bank deposited by the said Kate V. Beers, and that the defendants are entitled to judgment against the plaintiff, dismissing the complaint upon the merits, with costs.

Judgment for defendants, with costs.

