demand, I relied ·upon my right of lien. I refused to entertain it; it was mine by law. I said the reason why I wouldn't give it was I had a prior claim. All I said was that I had a lien on it by virtue of being a stable keeper. I don't know as I told him the amount. I don't remember whether he made any inquiries as to the amount due for my lien. I had no interest in the transaction. I paid no attention to him."

It is very evident from the evidence that the defendant undertook to force the plaintiff to pay, not only the lien which existed, but various other claims which the defendant held against the Leahy & O'Brien Company, which had formerly owned the property. This the jury has practically found by its verdict for $29.50 in favor of the defendant, and we are of opinion, under the circumstances of this case, the defendant having failed to disclose to the plaintiff, who was not in a position to know, the amount of the lien, that the jury should have been charged as requested. The defendant could not refuse to disclose the exact amount due under the lien, and make a demand for a sum largely in excess of that amount, and then be protected in his wrong by the fact that an actual tender of the sum due was not made.

The judgment and order appealed from should be reversed, and a new trial granted, costs to abide the event. All concur.

---

(59 App. Div. 156.)

### In re MEEHAN.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

.1. BANK DEPOSIT—JOINT ACCOUNT—GIFT—EXECUTORS AND ADMINISTRATORS.

　　Moneys were deposited in several banks in the name of decedent "and" wife,· or in the name of decedent "or" wife; and there was evidence of declarations of deceased that the moneys so on deposit were to belong to his widow after death, and that they were so deposited in order that she might obtain them without any trouble. *Held* sufficient evidence to sustain a finding that it was the intent of the husband that the moneys should go to his widow on his death.

2. SAME—WITNESSES—CONVERSATION WITH DECEASED.

　　Under Code Civ. Proc. § 829, providing that no party interested in the event of a suit shall be examined as a witness in his own behalf in any proceeding against an administrator of a deceased person, testimony by a daughter of deceased is not admissible in an action against the wife, as administratrix, to show deceased's intent, where the question in issue is the ownership of money left by him, as between the administratrix and the heirs.

Appeal from surrogate's court, Kings county.

In the matter of the judicial settlement of the accounts of Mary J. Meehan as administratrix of Christopher Meehan, deceased. From a report of a referee affirmed by the surrogate, contestants appeal. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Charles A. Webber, for appellants Larkin and others.
William F. Connell, for appellants Duncan and others.
Herbert T. Ketcham, for respondent.

JENKS, J. The next of kin appeal from a decree of the surrogate of Kings county stating the account of the administratrix, and directing distribution. The account and the issues raised by certain objections were referred, and the referee's report was confirmed by the decree. The only question raised by this appeal is whether the administratrix should account for certain moneys which at the decedent's death were deposited in three accounts in savings banks. The decedent's name was Christopher Meehan. His wife's name was Mary J. Meehan, and she is the administratrix. Two of the deposits were in the names of Christopher and Mary Meehan, respectively, and the third was in the names of "Christopher or Mary Meehan." The referee found that the moneys thus deposited were the property of Mary Meehan. It is admitted that all of these moneys were the moneys of the decedent just prior to the times of the deposits. There were seven accounts touched upon by the evidence which were opened by the decedent or by his authority. For a number of years before his death the decedent gave to his wife moneys for deposit, and, subject to his directions, she conducted the business incident thereto, including withdrawals. The deposit books were kept in the house, accessible to the decedent at all times. There was evidence of declarations of the decedent that these moneys in question were to belong to his widow after his death, and that the deposits were made so she might obtain them "without any trouble at all." I think that the decision of the learned referee, confirmed by the decree, is right. The rule is that such transactions show the intent of the husband to give the moneys to the wife if she survived him, and upon her survival her title thereto is absolute. Sanford v. Sanford, 45 N. Y. 723, 727; Id., 58 N. Y. 67; Borst v. Spelman, 4 N. Y. 284; Fowler v. Butterly, 78 N. Y. 68; McElroy v. Bank, 8 App. Div. 46, 40 N. Y. Supp. 422; Id., 8 App. Div. 192, 40 N. Y. Supp. 340. This principle is commented upon and affirmed in Re Albrecht, 136 N. Y. 91, 95, 32 N. E. 632, 18 L. R. A. 329. So far as the expression "or" is concerned, in the form of the third account, there is the testimony I have summarized, which is sufficient to sustain the finding of intent. And in each McElroy Case, supra, and in Fowler v. Butterly, supra, the names were used with "or" in place of "and." In the first McElroy Case the learned court discussed the relative force of "and" and of "or." While I concur in the conclusion reached by the learned justice, I think that the word "or" in no way lessens the force of the form, while it certainly as fully conveys the idea of survivorship. De Puy v. Stevens, 37 App. Div. 289, 55 N. Y. Supp. 810, cited by the learned counsel in his scholarly and exhaustive brief, was distinguished in the opinion written in that case from the doctrine of the Sanford and McElroy Cases, supra, as being "materially different" from them, because the relation of husband and wife did not exist, while the testimony was said to be "unsatisfactory and unconvincing." Pages 292, 295, 37 App. Div., and pages 812, 815, 55 N. Y. Supp. In re Bolin, 136 N. Y. 177, 32 N. E. 626, did not present the relationship of husband and wife, and the court said that the mere fact of the deposit, in the absence of other evidence, was insufficient.

But one exception is presented. Margaret Larkin, one of the contestants, was sworn, and this question was put to her by her counsel:

"Q. Did you have a conversation with your father, in which the moneys on deposit in a savings bank or banks was the subject thereof, and in which the reasons for its being in names was given?"

This was objected to as—

"Immaterial, irrelevant, and incompetent, and as inadmissible under section 829 of the Code. Objection sustained. Exception."

It was conceded on the argument that the objection was sufficient to raise the question of disqualification, under section 829 of the Code of Civil Procedure. Mrs. Larkin was one of the daughters and next of kin of the decedent, and as such was entitled to share in the residue of the estate. If the estate was increased, her interest was increased in proportion. She was, therefore, interested in the event. She was called as a witness in her own interest, and presumably against Mary J. Meehan, a person who was deriving her title to the moneys claimed by her through or under her husband, the deceased person; and she was asked, concededly, touching a personal communication made to her by the deceased person. Such testimony is plainly against the prohibition of the statute, which is to prevent the living from proving out of his own mouth a communication between him and the dead, which he could do without either fear or possibility of contradiction. Pinney v. Orth, 88 N. Y. 447. See Cornell v. Cornell, 12 Hun, 312, and authorities cited.

The decree should be affirmed, with costs to the respondent administratrix, payable out of the estate. All concur.