Sarah E. Kelly, Appellant, *v.* The Home Savings Bank of the City of Albany, Defendant, Impleaded with Franklin B. Beers and Harvey S. Bedell, as Executors, etc., of Kate V. Beers, Deceased, Respondents.

*Savings bank deposit, "Kate V. Beers or Sarah E. Kelley\* her daughter, or the survivor of them" — the intent of the donor to make the gift presents a question of fact — when sufficient importance is not given to that question by the trial court — testimony that certain securities of an estate were of doubtful value — evidence of a codicil to her will made by the depositor after the deposit — statements made by the depositor after the deposit are incompetent — possession of the bank book by the depositor as agent or trustee — effect of a verdict taken in an equity case.*

In an action brought by Sarah E. Kelly against the executors of her mother, Kate V. Beers, to determine the respective rights of the parties to a deposit in the Home Savings Bank of the city of Albany, standing in the name of "Kate V. Beers or Sarah E. Kelley\* her daughter, or the survivor of them," it appeared that in December, 1900, Kate V. Beers made a will by which she gave to the plaintiff, her daughter, subject to the payment of her funeral expenses, all the money which she should have at the time of her death on deposit in banks in the city of Albany, stating that she intended such amount to be about $7,000, and that if it should not aggregate that sum her executors should make up the difference; that on September 30, 1901, the said Kate V. Beers and the said Sarah

---

\* Kelly.

E. Kelly, her daughter, went to the Home Savings Bank, in which Mrs. Beers had an account standing in her individual name, and that Mrs. Beers presented her passbook and said to one of the officers of the bank "that she would like that account arranged so that either she or her daughter could draw it and if anything should happen to her, her daughter could get the money without any further trouble;" that the officer told her that he "would make out a new book in the name of herself or her daughter or the survivor of them; that would arrange it as she wished;" that the account in suit was then opened with the moneys withdrawn from the old account, and that the new passbook was delivered to Mrs. Beers, who immediately delivered the same to Mrs. Kelly. During Mrs. Beers' lifetime no withdrawals were made from the account, but Mrs. Beers made two further deposits therein.

June 30, 1903, the day before Mrs. Beers' death, she executed a codicil to her will, by which she revoked the gift to Mrs. Kelly of the bank accounts specified in her will, and in place thereof bequeathed to her the sum of $7,000. Upon Mrs. Beers' death, the passbook representing the account in suit was found, with other bank books, in a writing desk kept in Mrs. Beers' sitting room, and to which Mrs. Beers and Mrs. Kelly each had a key.

Upon the trial the plaintiff gave evidence tending to show that Mrs. Beers had made declarations to the effect that she intended to have her bank accounts fixed so that the moneys therein should, at her death, belong absolutely to Mrs. Kelly. The defendants gave evidence tending to show that the plaintiff had admitted that she had never had possession of the passbook, and also that Mrs. Beers had said to her that the money was to be hers after Mrs. Beers' death. The plaintiff denied the alleged admissions.

The trial court rendered a decision in which the court found, as a matter of law, that Mrs. Beers had not divested herself of title to, dominion or control over the moneys in the savings bank account, and had not made a gift of such moneys to Mrs. Kelly, and had not constituted Mrs. Kelly a joint owner with herself with the right of survivorship of the moneys deposited in the account.

Upon an appeal from a judgment entered upon such decision dismissing the plaintiff's complaint, it was

*Held,* that with respect to alleged gifts of, or trusts created in, savings bank accounts, unless there is a clearly expressed transfer or trust agreement, showing the intent of the donor or trustee, whenever there is an apparent attempt to make a gift or create a trust the intent of the alleged donor or trustee is a question of fact to be determined after an examination of all the circumstances in each case.

That in the case at bar the intent of Mrs. Beers in changing the account was a question of fact to be determined by the trial court;

That it was permissible for Mrs. Beers to give Mrs. Kelly a joint interest with her in the deposit and an absolute title to the entire deposit in case Mrs. Kelly survived her;

That the important question for determination was whether Mrs. Beers intended to create such a joint ownership or whether the change in the account was made merely as a matter of convenience in drawing the money from the bank;

That the trial court did not give sufficient importance to the question of the intent of Mrs. Beers in making the transfer and that a new trial should be granted;

That the court also erred in allowing one of Mrs. Beers' executors to testify that certain of the securities in which the testatrix's estate was invested were of doubtful value, for the reasons, first, that it did not appear that the executor was qualified to express such an opinion, and, for the further reason, that it did not appear that the securities had become of doubtful value subsequent to the time when the transfer of the account was made, and hence that the evidence was material;

That the court also erred in allowing evidence of the codicil made by Mrs. Beers to her will on June 30, 1903, there being nothing in the record to show that the transfer of the savings bank account was a tentative one;

That any statement made by Mrs. Beers, not a part of the *res gestœ*, and not made in the plaintiff's presence or in any way that she was bound thereby, should not affect the determination of the question as to the intention of Mrs. Beers at the time when the transfer of the savings bank account was made;

That the principle that declarations of a donor of personal property made after the gift are incompetent and ineffective for the purpose of defeating the donee's title, was applicable;

That the possession which Mrs. Beers had of the savings bank book at the time she made the codicil to her will might have been as agent or trustee for the benefit of the joint owners.

PARKER, P. J., dissented.

When, in a case where a trial by jury is not a constitutional or statutory right, the trial court seeks the aid of a jury in the determination of one or more questions of fact, it may adopt the findings of the jury, modify them, or disregard them and render a decision as though the trial had taken place without a jury; the jury's verdict is at most simply for the information of the court.

APPEAL by the plaintiff, Sarah E. Kelly, from a judgment of the Supreme Court in favor of the defendants, Franklin B. Beers and another, as executors, etc., of Kate V. Beers, deceased, entered in the office of the clerk of the county of Albany on the 28th day of June, 1904, upon the decision of the court, rendered after a trial at the Albany Trial Term, certain questions of fact having been submitted to a jury, dismissing the complaint upon the merits.

*Countryman, Nellis & Du Bois*, for the appellant.

*William P. Rudd* and *Milton H. Merwin*, for the respondents.

CHASE, J. :

This action is brought to recover $2,378.65, being the amount of a deposit with the defendant Home Savings Bank of the City of

Albany, standing in the name of " Kate V. Beers or Sarah E. Kelley * her daughter, or the survivor of them."

Kate V. Beers died July 1, 1903, leaving two children, the plaintiff Sarah E. Kelly and the defendant Franklin B. Beers. She had an estate which, including all of the securities at their face value, and the savings and other bank accounts herein mentioned, amounted to about $31,844.44. Of such amount about $8,375 is claimed by the executors to be of doubtful value, and $9,878 is made up of deposits in savings and other banks in Albany, as more specifically mentioned hereafter, leaving the gross value of the estate, exclusive of savings and other bank accounts in Albany, and such alleged doubtful securities, about $13,591.44.

Kate V. Beers on July 1, 1895, made her will, and on the 30th day of June, 1900, she made a codicil to such will, and by said codicil she gave to her daughter, Sarah E. Kelly, any, all and whatever money she should have on deposit at the time of her decease in the Albany Savings Bank.

.On the 6th day of December, 1900, Kate V. Beers made a new will, in and by which she gave to descendants of the plaintiff some specific articles of personal property and legacies aggregating $4,000, and to the descendants of her son, Franklin B. Beers, some specific articles of personal property and legacies aggregating $3,000. By said will she gave to said Franklin B. Beers certain specified securities aggregating $8,350, and to the plaintiff, her daughter Sarah E. Kelly, a legacy as follows : " I give to my daughter Sarah E. Kelley* subject to the payment of my funeral expenses therefrom, all and whatever money I shall have on deposit in any of the savings banks or other banks in the city of Albany, N. Y., at the time of my death, which amount I intend shall be about seven thousand ($7,000.00) dollars, and in case I shall not have as much as $7,000 on deposit in said banks at the time of my death, then and in that event, I direct my executors hereinafter named to pay to my said daughter Sarah E. Kelley* from and out of any other moneys in their hands, before paying any of the hereinafter named legacies, such sum as will, together with the amount of said deposit, equal seven thousand dollars, less the amount of my funeral expenses."

---

* Kelly.

Kate V. Beers then had on deposit in savings and other banks in Albany in the form herein stated the sum of $7,409.20. At that time one of her said deposits included in said aggregate amount was a deposit of $3,000 in the National Savings Bank of Albany, which deposit then stood and since June 23, 1893, had stood in said savings bank in the name of " Mrs. Kate V. Beers in trust for Sarah E. Kelley,* her daughter." She then had two other accounts in Albany savings banks standing in her individual name, one of which was with the defendant Home Savings Bank.

On September 30, 1901, Mrs. Beers and the plaintiff went to the defendant Home Savings Bank and Mrs Beers presented to the bank her passbook, and said to one of the officers of the bank " that she would like that account arranged so that either she or her daughter could draw it and if anything should happen to her, her daughter could get the money without any further trouble." The officer told her that he " would make out a new book in the name of herself or her daughter or the survivor of them; that would arrange it as she wished."

A check for the balance appearing on the old book was drawn, Mrs. Beers indorsed the check and delivered it to the bank, and a new bank book was made out for the amount of the check. Both Mrs. Beers and Mrs. Kelly placed their signatures in the signature book of the bank at the request of the bank officers. The new book was made out in the name of " Kate V. Beers or Sarah E. Kelley* her daughter, or the survivor of them," and it was delivered to Mrs. Beers. It appears in evidence without contradiction, except as to alleged admissions on the part of the plaintiff, that when the book was handed to Mrs. Beers by an officer of the bank she immediately delivered the same to her daughter, Mrs. Kelly. The amount then drawn and redeposited with the defendant Home Savings Bank was $1,829.34. There were no withdrawals from said bank from the time said deposit was changed on September 30, 1901, to the time of Mrs. Beers' death, but Mrs. Beers made two further deposits therein.

On the 7th day of January, 1902, Mrs. Beers changed her account, amounting to $3,052.50, then standing in her individual name in the

* Kelly.

Albany Savings Bank, to an account with " Mrs. Kate V. Beers or Sarah E. Kelly, her daughter, or survivor." And on the 5th day of September, 1902, she changed her account in the Albany Trust Company, amounting to $1,545, then standing in her individual name, to an account with " Kate V. Beers or Mrs. Sarah E. Kelly, payable to either or survivor of either."

About a month before her death Mrs. Beers went to visit her said son in Rome and the plaintiff went to visit her daughter in Connecticut. On the 30th day of June, 1903, at Rome, the day before Mrs. Beers' death, she executed a codicil to her will, by which she revoked the bequest to her son of specific securities, and to her daughter of savings and other bank accounts, and in place thereof she gave to her son the sum of $7,000 and to the plaintiff the sum of $7,000. The residuary clause of her will, by which she directed that the residue of her estate be divided between her said son and daughter in equal shares, remained undisturbed.

For about four years prior to the death of Mrs. Beers the plaintiff had resided in Albany with her mother, except that she was away at different times, for several weeks or months, visiting her children who lived in other States. Franklin B. Beers resides and has for several years resided at Rome, N. Y. The savings bank books were kept in a writing desk in the sitting room of Kate V. Beers, and the plaintiff and Mrs. Beers each had a key to such writing desk. When Mrs. Beers died the book of the defendant Home Savings Bank with the other bank books were in said writing desk. A few days after her mother's death plaintiff opened the writing desk and took the bank books therefrom and delivered them to the executors named in the will of her mother on their statement to her that, if they found that the books were the property of the plaintiff, they would return them to her. The plaintiff demanded of the defendant Home Savings Bank payment of said account in its bank, and the amount not being paid this action was brought to recover the same. By consent the executors of the will of Mrs. Beers were made parties defendant in the action and the defendant Home Savings Bank by stipulation holds the money on deposit subject to the final order and judgment of this court.

At the trial a jury was called and plaintiff offered in evidence the book of the defendant bank, also testimony by the bank officials

as to the transaction when the book was issued and evidence that the book was in the writing desk after Mrs. Beers' death.    Plaintiff also called three other witnesses, one her daughter who testified that two and a half years prior thereto her grandmother had said to her : " Vance, I want to make over the money which I have in the savings banks to your mother in order that she may draw the money when I want to have her or after my death, without any trouble." She testified that her grandmother said she was going to " put the moneys in the savings banks — all of them — all the moneys she had in the banks, in mother's name so she could draw it, in order there might be no trouble after her death if she did die, or that she might have it during her lifetime."    Repeating this conversation she used this language : " My grandmother stated that she wanted the accounts made so she or my mother could draw the money at any time and that referred to any savings bank account that she might have."

Another witness, a real estate agent, who had done business for Mrs. Beers in her lifetime, testified that three years before Mrs. Beers was at his office and that she said " that she would like to fix her account in the savings banks so that Mrs. Kelly could draw the moneys or that money should be absolutely hers at her death.   *   *   * She used to dwell upon that subject quite a good deal."

Another witness, a neighbor of Mrs. Beers, testified that Mrs. Beers said to her " that all of the moneys in the different banks was to be for her daughter Sarah; that she might have it at any time or after Mrs. Beers' death."

After the plaintiff rested, the executors were each sworn and testified to conversations with the plaintiff after Mrs. Beers' death, and each testified that the plaintiff said that she had never had possession of the book.   One of the executors testified that plaintiff said to him that she owned the books and in substance that she understood from her mother, and that her mother had said to her at different times, that the money was to be hers after she was dead. The defendants also offered in evidence the wills and codicils referred to and also testimony relating to the condition and value of the estate and as to the savings bank accounts and the history of each.

The plaintiff was sworn in denial of the alleged admissions and gave further testimony as to what occurred subsequent to Mrs.

Beers' death.   After a motion for a nonsuit and for a direction of a verdict in favor of the defendants the court said, "I think I will submit the question of intent to the jury," and a question was submitted to the jury as follows: "Did Mrs. Beers intend to create a joint ownership in herself and the plaintiff in the moneys deposited in the Home Savings Bank, the ownership of the whole to go to the one who survives?" To which they answered, "Yes."

Nothing further was done at that time, but subsequently the court signed a decision in which it recited, among other things, that "A jury having been impanelled to advise the court as to certain matters of fact, and having answered in the affirmative the following question submitted to it to be answered" (question quoted), and further recited that upon due deliberation it had found as matter of fact certain findings setting forth with much detail the facts including a finding "That the said Kate V. Beers retained control over said money so deposited as above set forth down to the time of her death," but did not make any specific finding as to the intent of Mrs. Beers in making the change in her account in the defendant bank.   The court then found as matter of law:

"*First.* That the said Kate V. Beers, deceased, did not by any act of hers divest herself of dominion or control over the moneys deposited with the defendant, the Home Savings Bank.

"*Second.* That the said Kate V. Beers, deceased, did not divest herself of all title to, dominion or control over, the moneys or any part or portion thereof, deposited with the defendant, the Home Savings Bank.

"*Third.* That the transactions between Kate V. Beers and the plaintiff, in relation to the moneys deposited in the defendant, the Home Savings Bank, were ineffectual to constitute a completed gift of such moneys, or any part or portion thereof by the said Kate V. Beers to the plaintiff.

"*Fourth.* That the said Kate V. Beers did not by any of her act or words constitute the plaintiff a joint owner with herself, with the right of survivorship, of the moneys deposited by her, the said Kate V. Beers, with the defendant, the Home Savings Bank."

A judgment was entered upon such decision dismissing the complaint.

Where a trial by jury is not a constitutional or statutory right, but the court seeks the aid of the jury in the determination of one or more questions of fact, it may adopt the findings of the jury, modify them or render a decision as though the trial had taken place without a jury. (*Acker* v. *Leland*, 109 N. Y. 5; *McClave* v. *Gibb*, 157 id. 413.) The verdict in this case was not adopted by the court as a finding in its decision and plaintiff's exceptions show that the court expressly refused to find at plaintiff's request in accordance with such verdict. The verdict at most is but evidence for the information of the court. (*McClave* v. *Gibb*, *supra*.)

The cases before the courts relating to alleged gifts and trusts, particularly of savings bank accounts, have become so numerous and the reasons for such alleged gifts and trusts are so varied, that the courts now hold, in substance, that unless there is a clearly expressed transfer or trust agreement showing the intent of the donor or trustee, that whenever there is an apparent attempt to make a gift or create a trust the intent of the alleged donor or trustee is a question of fact to be determined after an examination of all the circumstances in each case.

In *Matter of Totten* (179 N. Y. 112) the court, quoting from *Beaver* v. *Beaver* (117 id. 421), say : " We are inclined to think that to infer a gift from the form of the deposit alone would, in a great majority of cases, and especially where the deposit was of any considerable amount, impute an intention which never existed and defeat the real purpose of the depositor."

The most recent expression of the courts in construing a written decision for a transfer of a savings bank account is in *Augsbury* v. *Shurtliff* (180 N. Y. 138) where a husband and wife signed a formal paper to a savings bank directing that their accounts be merged in one running to " John C. Roof or Sarah Ann Roof or the survivor of them," and in which they say, " Our object being that in case of the death of either the other may draw the whole amount," the court say : " In the absence of evidence upon the subject the inference might be permissible that it was their intention to give the survivor the right to draw the whole amount so as to make it his or her own property. Assuming this to be so, the effect of the paper was, therefore, a written order addressed to the bank requesting it to change their respective deposits so as to make each the

joint owner of the entirety analogous to a joint tenancy or tenant by the entirety in real estate so that upon the death of one the survivor became the owner of the whole." In the case now under consideration we are of the opinion that the intent of Mrs. Beers in changing the account in the defendant bank was a question of fact to be determined by the trial court. It is not claimed that Mrs. Beers at that time was apprehensive of death, or that the alleged gift to the plaintiff can be sustained as a gift *causa mortis*, neither was it an absolute and unqualified gift to the plaintiff, for Mrs. Beers as a joint owner could have drawn from the deposit in her lifetime, and would have had the whole amount again in case she had survived the plaintiff, but there is no statute or principle of law to prevent Mrs. Beers giving to the plaintiff a joint interest with her in the deposit and an absolute title to the entire amount in case she survived her.

Such a gift is recognized in *Sanford* v. *Sanford* (45 N. Y. 723; 58 id. 69); *McElroy* v. *National Savings Bank* (8 App. Div. 192); *McElroy* v. *Albany Sav. Bank* (Id. 46), and in *Matter of Meehan* (59 id. 156). The gifts mentioned in the cases last cited were all between husband and wife. The fact that an alleged donor and donee are husband and wife is very material in determining the intent of the parties to the transaction, but when the intent is established the principle stated in such authorities is equally applicable to gifts between parent and child. In *Farrelly* v. *Emigrant Industrial Sav. Bank* (92 App. Div. 529) the court, in considering the effect of a mother changing an account in a savings bank standing in her individual name to an account in the name of herself or son, say : " There is some authority for holding that the change in the form of deposit, by which the son was enabled to draw equally with the mother, is evidence of an intent upon the part of the mother to constitute the son a joint owner with her in the fund. Whether the deposit standing alone, disassociated from any other fact, would have such effect it is not necessary for us now to determine, and we express no opinion thereon. Taking into consideration, however, the form of the deposit, the delivery of the book with directions to deliver to the son, it would clearly authorize the court to find that it was the intent upon the part of the mother to vest in the son a joint owner-

ship with her of the money, and being vested with such ownership the survivor would take the whole. (*McElroy* v. *National Savings Bank*, 8 App. Div. 192; *Matter of Meehan*, 59 id. 156; *Mack* v. *Mechanics & Farmers' Savings Bank, supra.**) *Matter of Bolin* (136 N. Y. 177) is not in conflict with this view. That decision is to be limited to the particular facts upon which it was based. All it decides is that, under the circumstances which were made to appear therein, the only purpose of depositing in the names of both was for matter of convenience, and such fact appearing it was held to destroy the force and effect of the deposit in the joint names as constituting a joint tenancy. Where, however, the deposit is in joint names and the intent appears to create the joint tenancy, its effect is to vest title to the whole fund in the survivor, and under such circumstances, whether the book be delivered to the survivor or not, or whether he ever has had it in his possession during the lifetime of his joint owner, is not of consequence, as the intent existing to create the relation of a joint tenancy, title vested in the survivor *eo instanti*, upon the death of the joint owner, and no delivery of anything is necessary to effectuate such result."

The plaintiff in this case was present when the account was transferred at the defendant bank and signed the signature book, and she also claims that the bank book was then and there delivered to her. The important question in this case for determination is whether Mrs. Beers intended to give to her daughter a joint interest with her in the savings bank account with the absolute ownership of the entire fund in case the plaintiff survived her, or whether the account was so transferred merely as a matter of convenience in drawing the money from the bank. (*Matter of Bolin*, 136 N. Y. 177; *Farrelly* v. *Emigrant Industrial Sav. Bank, supra.*) The case of *De Puy* v. *Stevens* (37 App. Div. 289) is not in conflict with the conclusion herein reached. In that case the opinion of the court is principally devoted to a discussion as to what is necessary to constitute an unqualified and absolute gift *inter vivos*. The court then further says: " The only theory upon which such a contention (gift of residuum of fund on deposit to survivor) can be maintained is that a joint ownership was created when the fund was withdrawn

---

*50 Hun, 477.— [REP.

from the bank and redeposited in the name of Mrs. Sibbalds and the plaintiff, and whether or not this was accomplished depends largely upon the intent with which that change was made." The court then holds that the intention of Mrs. Sibbalds to create a joint ownership with the right to the survivor to take the entire account was not established. It expressly states that the intent of the donor is an essential element in determining such question. We are of the opinion that the trial court in this case did not give sufficient importance to the question of the intent of Mrs. Beers in making the transfer, and that a new trial should be granted. We are also of the opinion that the court erred in allowing one of the executors to testify, against the plaintiff's objection, to the effect that certain of the securities of the testatrix were of doubtful value. The opinion was given by the executor without showing that he was qualified to express such an opinion, and without the slightest evidence that such securities had become of doubtful value subsequent to the time when the transfer of the account in the defendant bank was made. Unless such securities had become of doubtful value subsequent to the time of the transfer of the account in the defendant bank, it could not have been a reason for changing her will, and such evidence was immaterial even if otherwise competent.

We also think that the court erred in allowing evidence of the codicil made by Mrs. Beers to her will on June 30, 1903. There is nothing in the record to show that the transfer of the account in the defendant bank was a tentative one, but from the record as it now appears it was either a transfer for the purpose of vesting in the plaintiff a joint interest in the account with Mrs. Beers, with right of survivorship, or it was for the purpose of convenience in transferring the account.

Any statement made by Mrs. Beers, not a part of the *res gestœ* and not made in plaintiff's presence or in a way that she is bound thereby, should not affect the determination of the question as to the intention of Mrs. Beers at the time when the transfer was in fact made. Whatever possession Mrs. Beers had of the savings bank book at the time of making the codicil to her will may have been as agent or trustee for the benefit of the joint owners. It is a general principle applicable to this case that declarations of a donor of personal property made after the gift are incompetent and inef-

fective for the purpose of defeating the title of the donee. (*Scheps* v. *Bowery Sav. Bank*, 97 App. Div. 434.) We do not intend by this decision to indicate any opinion as to the merits of this controversy on the question of the intent of the alleged donee in making the transfer of the book as stated. For the reasons stated the judgment should be reversed and a new trial should be granted, with costs to the appellant to abide the event.

All concurred, except PARKER, P. J., dissenting, and CHESTER, J., not voting, HOUGHTON, J., being of opinion that the admission of the codicil was not reversible error.

Judgment reversed and new trial granted, with costs to appellant to abide event.