In the Matter of the Judicial Settlement of the Account of ROSINA B. LARMON, as Executrix, etc., of WILLIAM C. LARMON, Deceased.

ROBERT N. WILSON and Another, as Accounting Executors of ROSINA B. LARMON, Deceased, Appellants; CHARLES W. LARMON, as Administrator with Will Annexed of WILLIAM C. LARMON, Deceased, Respondent.

Third Department, March 4, 1925.

Joint tenancy — mortgages purchased by testator with his own funds but assigned to testator " or " wife passed to wife by right of survivorship — evidence does not show contrary intention — admission by wife in affidavit in relation to transfer tax appraisal does not affect intent of testator.

Mortgages purchased by the testator with his own funds but assigned to him " or " to his wife passed to the wife on the death of the testator by right of survivorship under the rule that a mortgage or an assignment thereof standing in the joint names of a husband and wife constitute *prima facie* evidence of a gift to the wife in case of her survivorship in the absence of evidence showing a contrary intention.

The presumption is supported in this case by affirmative evidence to the effect that the testator had several times taken money invested in his own name and placed it in the joint names of himself and his wife, and a contrary intention on the part of the testator was not shown by evidence to the effect that the testator had said that none of his money would go to his wife's relatives, or by the fact that the testator's wife was given only a life interest in the property devised by the will.

The fact that the testator's wife made an affidavit in the transfer tax appraisal proceedings, as executrix, to the effect that the testator did not hold any property jointly or make any transfer of real or personal property in contemplation of death, or intended to take effect in possession or enjoyment at or after death, though an admission against the interests of the testator's wife, does not in any way affect the intention of the testator in having the assignments made to himself or to his wife.

APPEAL by Robert N. Wilson and another, as executors, etc., of Rosina B. Larmon, deceased, executrix, etc., of William C. Larmon, deceased, from a decree of the Surrogate's Court of the county of Washington, entered in the office of said surrogate on the 31st day of July, 1924, which decree directed that the account of the appellants as executors be surcharged with certain mortgages

18

alleged to have been the property of William C. Larmon on the date of his death.

*Robert N. Wilson* [*Daniel Naylon, Jr.,* of counsel], for the appellants.

*Willoughby L. Sawyer,* for the respondent.

McCANN, J.:

Rosina B. Larmon, executrix of the last will and testament of William C. Larmon, died on September 20, 1922. She had rendered no account of her proceedings as executrix of the will of William C. Larmon. Robert N. Wilson and Irving P. Estcourt, her executors, duly filed their account of proceedings of Rosina B. Larmon, as executrix of the last will and testament of William C. Larmon, and asked for the final judicial settlement thereof. Objections were filed alleging that the account should be surcharged with certain bonds and mortgages and accrued interest thereon known as the Cooley, Burgess, Haney, Simonson, Johnson and Sweet mortgages, aggregating $23,000, and alleged to be the property of William C. Larmon as of the date of his death March 26, 1920. The decree of the surrogate directed that the account be so surcharged and the surrogate held that William C. Larmon did not intend a gift of said mortgages to his wife or her right to survivorship therein as claimed, and this appeal is taken from such findings and also from that portion of the decree which adjusts the commissions and allowances for attorneys' fees and provides for the transfer of the securities in question pursuant to the provisions of the decree.

William C. Larmon and Rosina B. Larmon were husband and wife residing in Washington county in this State. For some years prior to his death they each had purchased certain mortgages with their individual funds on real estate in Nebraska. These mortgages were originally made to C. J. Bills or to the firm of Bills & Cline, real estate dealers, of Lincoln, Neb., and the assignments were taken as follows: Of all such mortgages purchased with the individual funds of William C. Larmon the assignment of the mortgages read " William C. Larmon *or* Rosina B. Larmon," and all assignments of mortgages purchased with the individual funds of Rosina B. Larmon read " Rosina B. Larmon *or* William C. Larmon." Each during his lifetime kept possession and control of his own investments and received the use for himself of all income therefrom. Three of the mortgages in question were purchased prior to the time that William C. Larmon made his will and the remaining three were purchased after the date of his will. Bills & Cline kept a set of books in which Larmon and his wife each had a separate account of investments, receipts and remittances of interest and other transactions.

Each knew that the other was taking mortgages in their joint names as indicated. Joint bank accounts also existed in the name of William C. Larmon and Rosina B. Larmon. The arrangement made for such assignments was also a matter of convenience to Bills & Cline as it was thereby known on the books whether the mortgage was purchased by the husband or by the wife as the purchaser in each instance was first mentioned in the assignment. This made it possible for the brokers to remit interest and enter other credits in each case to the proper person. This is evidenced by the testimony of Mr. Bills, one of the partners of the real estate concern, and also by correspondence between the parties.

It is claimed by the appellants that Rosina B. Larmon rightfully refrained from accounting for the assets of the mortgages thus described. The surrogate has held that there is no right of survivorship. It is a well-established proposition of law that " a mortgage standing in the joint names of husband and wife constitutes *prima facie* evidence of a gift to the wife in case of her survivorship in the absence of evidence showing a contrary intention." (*Matter of Kennedy,* 186 App. Div. 188.) The legal proposition just quoted cannot be seriously questioned. The real controversy in this case is whether or not a contrary intention has been shown. In the case of *West* v. *McCullough* (123 App. Div. 846; affd., 194 N. Y. 518) this proposition is reviewed extensively in all its phases and numerous cases are cited to sustain the proposition that a joint survivorship as between husband and wife may be created, as in that case, in a deposit made in a savings bank or in an investment in their joint names. The *West* case sustains the contention of the appellants in this case as to the investment made in the names of William C. Larmon or Rosina B. Larmon. *Matter of Meehan* (59 App. Div. 156) is authority for the proposition that the same rule applies when the word " or " is used instead of the word " and." The leading authorities are collated in *Matter of Blumenthal* (236 N. Y. 448). The rule there is stated that where one takes title out of his own name and puts it in the name of himself and his wife there is a presumption of intention of survivorship. On the contrary, where it does not appear who owned the property in the first instance or where it was purchased together with the joint funds of both, then there is no such presumption in the latter case, they being presumed to be the owners in common rather than joint owners.

It would be useless to discuss the many cases referred to on the briefs. The proposition is too well established. It becomes necessary only to determine whether or not the presumption created has been overcome by the testimony. In *Potts* v. *Pardee* (220

N. Y. 431, 433) it is said: " The presumption growing out of a *prima facie* case, however, remains only so long as there is no substantial evidence to the contrary."

Substantial evidence has not been produced. Aside from the testimony arising from the existence of the notes in the form in which they have been described, the record shows evidence of the intent of the parties to create a survivorship; therefore, in addition to meeting the presumption it is necessary that testimony be produced to meet the affirmative testimony mentioned. It appears that both Larmon and his wife took money invested in their individual names and placed it in their joint names. Had this been done but once the evidence of interest would not have been strong, but in this case it was done several times and was a consistently followed custom. The objectors produced as a witness a sister of Mr. Larmon and her testimony is that from four to six weeks prior to the death of her brother she heard him say that " the Perrys or the Estcourts never should have his money. He said that was what Rosie [his wife] was working for, but they never should have his money." (The Perrys and Estcourts were the relatives of Mrs. Larmon.) Another witness was Mr. J. W. Kelly, a paperhanger, painter, etc., who testified that when doing work for either, Mrs. Larmon would pay the bill and " she would say it was her property and what she owned was hers, and what William owned was his, and when they were through with it whatever she had went to her heirs and whatever he had went to his heirs, and they joked over it, and I said ' that was a pretty good plan.' " Kelly also testified that he had heard these statements made more than once. Much stress is placed on the fact that Rosina made an affidavit in the transfer tax appraisal of the William C. Larmon estate as follows: " Q. Did the decedent hold any property in trust or jointly with another, and if so give full particulars relative thereto? A. No. Q. Did decedent make any transfer or conveyance of real or personal property by deed, grant, bargain, sale or gift in contemplation of death, or intended to take effect in possession or enjoyment at or after death? A. No." This is an admission against the interest of Rosina. Why it was made is difficult to determine but it cannot change in any way the intent of her husband. The statement was probably the result of a misunderstanding as to the legal force and effect of the question.

The foregoing is the substance of the testimony upon which it is claimed the legal presumption has been overcome and it is not sufficient. It is also urged that the fact that William C. Larmon made his will in such a form that his wife received only a life interest thereunder is evidence of his intent that she should

receive nothing more than a life estate in any of his property.  It is with equal force argued that the mere fact that he gave her the life interest in the property devised to her by his will is evidence that he thought she had sufficient funds of her own which belonged to her originally in addition to the $23,000 which she took by survivorship.

Exceptions were taken to the introduction of testimony by the objectors and to the ruling of the court in many matters and also to the order of the court reopening the case for further hearing but it is unnecessary to discuss them in view of the fact that the order of the court should be reversed.

That portion of the decree which provides for surcharging the notes in question with interest should be reversed, with costs, and the case should be remitted to the surrogate to readjust the allowance of commissions and attorneys' fees.

All concur.

Decree, so far as it provides for surcharging the notes in question with interest, reversed, with costs against the respondents, and case remitted to the surrogate to readjust the allowance of commissions and attorneys' fees.  The court finds that upon the death of William C. Larmon the title to the securities in question passed to Mrs. Rosina B. Larmon by right of survivorship.